E-FILED | 2/3/2025 4:07 PM
CC-20-2025-C-142
Kanawha County Circuit Clerk
Cathy S. Gatson

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

NATHAN SMITH,

       Plaintiff,

v.                                   CIVIL ACTION NO.:

WEST VIRGINIA STATE POLICE, an agency of
the State of West Virginia;
JOHN DOE #1, a West Virginia State Trooper;
JOHN DOE #2, a West Virginia State Trooper;
MINERAL COUNTY SHERIFF'S DEPARTMENT,
a division of the Mineral County Commission,
and MINERAL COUNTY COMMISSION,
a political subdivision of Mineral County, West Virginia;
JOHN DOE #3, a Mineral County Deputy Sheriff,

       Defendants.

## COMPLAINT

Comes now the plaintiff, Nathan Smith, by counsel, and brings this action against the defendants, pursuant to 42 U.S.C. §1983, alleging violations of his constitutional rights. Specifically, the plaintiff, Nathan Smith, alleges that his rights under the Fourth and Fourteenth Amendments to the United States Constitution and under Article III, Sections 1 and 10 of the West Virginia Constitution were violated by the defendants when the defendants used excessive and wrongful force, including breaking the plaintiff's neck, during the course of arresting the plaintiff and when the defendants unlawfully detained and arrested the plaintiff on or about February 4, 2024.

1

**PARTIES**

1.       The plaintiff, Nathan Smith, was at all times relevant herein, a resident of Mineral County, West Virginia.

2.       The defendant West Virginia State Police is a government agency of the State of West Virginia.

3.       The defendants John Doe #1-2 were, at all times relevant herein, employed by the West Virginia State Police as state troopers, acting under the authority of troopers of the State of West Virginia, and were at all times relevant herein acting under the color of the law and within the scope of their employment.  The defendants John Doe #1-2 are sued only in their individual capacities.

4.       The defendant, Mineral County Sheriff's Department, is a division of the Mineral County Commission and was, at all times relevant herein the public employer for the defendant deputy John Doe #3 and is located in Mineral County, West Virginia.

5.       The defendant, Mineral County Commission, is a political subdivision of Mineral County, West Virginia, and was, at all times relevant herein, the official entity responsible for the oversight of the Mineral County Sheriff's Department and the oversight and employment of the defendant deputy John Doe #3.

6.        The defendant John Doe #3 was, at all times relevant herein, employed by the Mineral County Sheriff's Department as a deputy sheriff, acting under the authority of a deputy sheriff of Mineral County, and was at all times relevant herein acting under the color of the law and within the scope of his employment. The defendant John Doe #3 is sued only in his individual capacity.

2

## JURISDICTION AND VENUE

7.      The defendant West Virginia State Police is a state agency and its principal office resides in Kanawha County, West Virginia.  Therefore, jurisdiction and venue are proper in the Circuit Court of Kanawha County pursuant to West Virginia Code §14-2-2 and West Virginia Code §56-1-1.

## FACTS

8.      On February 4, 2024, the plaintiff was at his home with Shandeliz Rodriguez and their infant son.

9.      Shandeliz Rodriguez was on a phone call at the time with a friend.

10.     The plaintiff took the phone from Shandeliz Rodriguez and hung up the call.

11.     Shortly thereafter, the defendants arrived at the plaintiff's home.

12.     John Does #1 and 2 knocked on the plaintiff's door and demanded that the plaintiff exit the home.

13.     The plaintiff voluntarily came out of his door onto the porch, and John Does #1 and 2 began yelling at the plaintiff.

14.     John Doe #3, went up the stairs to the porch of the plaintiff's home.

15.     The plaintiff repeatedly asked the officers what they were doing and informed them that he was there visiting his son.

16.     John Does #1 and 2 then grabbed the plaintiff and slammed him against the side of his house.

17.     Upon information and belief, John Does #1 and 2 then dragged the plaintiff off of his porch and into the yard, during which time they hit the plaintiff's head off the side of the house.

18.    Then John Doe #1 and/or John Doe #2 slammed the plaintiff to the ground and knocked his head on the ground below.

19.    When John Doe #1 and/or John Doe #2 slammed the plaintiff to the ground and knocked his head on the ground below, he broke the plaintiff's neck.

20.    John Does #1 and 2 then physically moved the plaintiff into a sitting position.

21.    The plaintiff sat on the ground outside of his home repeatedly asking for help because his neck hurt.

22.    The defendants John Does #1-3 ignored the plaintiff's pleas for help.

23.    The plaintiff continued to request help for his neck.

24.    The defendants John Does #1-3 told the plaintiff that they are moving him to a police vehicle.

25.    The plaintiff asked, "What are you guys putting me in the car for?"

26.    John Doe #3 responded, "Because you're under arrest."

27.    The plaintiff asked, "For what?"

28.    John Doe #3 responded, "Obstructing. And whatever else he's got going on. I'm not sure. … For the obstructing and some other stuff. Whatever."

29.    As the defendants John Does #1-3 moved the plaintiff into the car, the plaintiff began frantically telling the defendants John Does #1-3 that his neck was hurting and requesting the defendants John Does #1-3 be careful with his neck.

30.    The plaintiff began to whimper and cry out as the defendants John Does #1-3 pushed him into the car.

31.    The defendants John Does #1-3 rolled down the back window partially so they could speak with the plaintiff.

4

32.    John Doe #3 stood outside of the vehicle conversing and verbally harassing the plaintiff as the plaintiff continued to ask for medical attention for his neck.

33.    As time progressed, the plaintiff's speech became noticeably more slurred and harder to understand due to the pain from injuries caused by the defendants John Does #1-2's actions.

34.    John Doe #3 stated, "stop playing games" and "you talk too much" multiple times to the plaintiff.

35.    John Doe #3 mocked the plaintiff's slurred speech repeatedly.

36.    John Doe #1 and/or #2 inspected Plaintiff's head and neck after hearing the plaintiff complain about his neck.

37.    John Doe #1 and/or #2 pulled the plaintiff toward the open car door to look at the plaintiff's head, and the plaintiff repeatedly asked John Doe #1 and/or #2 to stop because it hurt.

38.    Upon information and belief, the defendants John Does #1-3 took the plaintiff to a police station.

39.    Shortly after arriving at a police station, an ambulance was called for the plaintiff.

40.    The ambulance arrived and took the plaintiff to Potomac Valley Hospital.

41.    Health care providers at Potomac Valley Hospital evaluated the plaintiff and found that the plaintiff's neck was broken.

42.    Upon learning that the plaintiff's neck was broken, the defendants John Does #1-3 removed the plaintiff's hand cuffs and immediately left.

43.    The plaintiff was then life-lighted to J.W. Ruby Memorial Hospital in Morgantown, West Virginia.

44.    On February 10, 2024, the plaintiff was released from the hospital.

45.    No charges were ultimately filed against the plaintiff by the defendants.

46.    No reasonable police officer in the defendants' positions could have believed that it was reasonable to forcefully grab the plaintiff, slam him against his home, and slam him on the ground, given the nature of the incident, the plaintiff's non-violent conduct, and the lack of any threat to the safety of the defendants or members of the public.

47.    At the time of the plaintiff's arrest and detainment, it was clearly established as a matter of law that a police officer may not seize or arrest an individual without probable cause to believe that the individual had committed, was committing, or was about to commit a criminal offense.

48.    No reasonable police officer in the position of the defendants could have believed that he had legal authority to arrest the plaintiff, given that the plaintiff merely opened his door and voluntarily came onto his porch.

## FIRST CAUSE OF ACTION

### (42 U.S.C. §1983 – Excessive Force)

49.    The defendants John Doe #1 and John Doe #2 while acting under the color of law, violated Nathan Smith's constitutional rights.

50.    The actions of the defendants John Doe #1 and John Doe #2 violated the constitutional rights guaranteed to Nathan Smith under the Fourth and Fourteenth Amendments to the United States Constitution.

51.    The actions of the defendants John Doe #1 and John Doe #2 were not taken in good faith and were in violation of clearly established law.

6

52.    The defendants John Doe #1 and John Doe #2 violated Nathan Smith's constitutional rights, as described and identified herein, by using excessive and wrongful force during the course of unlawfully detaining Nathan Smith on or about February 4, 2024.

53.    When the defendants John Doe #1 and John Doe #2 used excessive force against Nathan Smith, no objectively reasonable police officer could have perceived the force as necessary.

54.    As a proximate result of the defendants John Doe #1 and John Doe #2's excessive force, Nathan Smith's neck was broken.

55.    As a proximate result of the defendants John Doe #1 and John Doe #2's excessive force, the plaintiff, Nathan Smith, suffered medical expenses and other expenses.

56.    As a direct and proximate result of the defendants John Doe #1 and John Doe #2's unconstitutional actions, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.    Physical pain and suffering, past and future;

B.    Mental pain and suffering, past and future;

C.    Injuries resulting from the defendants' conduct;

D.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.    All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

57.    In addition to these compensatory damages, the plaintiff, Nathan Smith, also seeks to recover, under 42 U.S.C. §1988 the attorney fees and costs incurred during the course of this litigation.

58.     In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights, the plaintiff, Nathan Smith, further seeks to have the Court order the defendants John Doe #1 and John Doe #2 to undergo additional training and education addressing the defendants John Doe #1 and John Doe #2's use of excessive and wrongful force, the development of policies to preclude such actions in the future, and the implementation of discipline against the defendants John Doe #1 and John Doe #2 to hold them accountable for their wrongful actions.

59.     The defendants John Doe #1 and John Doe #2's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Nathan Smith, thereby entitling the plaintiff, Nathan Smith, to punitive damages in an amount to be determined by the jury.

## SECOND CAUSE OF ACTION

### (42 U.S.C. §1983 – False Arrest)

60.     The defendants John Doe #1, John Doe #2, and John Doe #3, while acting under the color of law, violated Nathan Smith's constitutional rights.

61.     The actions of the defendants John Doe #1, John Doe #2, and John Doe #3 violated the constitutional rights guaranteed to Nathan Smith under the Fourth and Fourteenth Amendments to the United States Constitution.

62.     The actions of the defendants John Doe #1, John Doe #2, and John Doe #3 were not taken in good faith and were in violation of clearly established law.

63.     The defendants John Doe #1, John Doe #2, and John Doe #3 violated Nathan Smith's constitutional rights, as described and identified herein, by unlawfully arresting the plaintiff on or about February 4, 2024.

8

64.     The defendants John Doe #1, John Doe #2, and John Doe #3's arrest of the plaintiff was unlawful, as the defendants John Doe #1, John Doe #2, and John Doe #3 could not have believed that they had legal authority to arrest the plaintiff, given that Nathan Smith had not committed, was not committing, nor was about to commit a criminal offense, given that the plaintiff merely opened his front door and voluntarily came onto his porch.

65.     As a direct and proximate result of the defendants John Doe #1, John Doe #2, and John Doe #3's unconstitutional actions, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.     Physical pain and suffering, past and future;

B.     Mental pain and suffering, past and future;

C.     Injuries resulting from the defendants' conduct;

D.     Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.     All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

66.     In addition to these compensatory damages, the plaintiff, Nathan Smith, also seeks to recover, under 42 U.S.C. §1988 the attorney fees and costs incurred during the course of this litigation.

67.     In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights, the plaintiff, Nathan Smith, further seeks to have the Court order the defendants John Doe #1, John Doe #2, and John Doe #3 to undergo additional training and education addressing the defendants John Doe #1, John Doe #2, and John Doe #3's wrongful arrest of the plaintiff, the development of policies to preclude such actions in the future, and the

implementation of discipline against the defendants John Doe #1, John Doe #2, and John Doe #3 to hold them accountable for their wrongful actions.

68.    The defendants John Doe #1, John Doe #2, and John Doe #3's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Nathan Smith, thereby entitling the plaintiff, Nathan Smith, to punitive damages in an amount to be determined by the jury.

## THIRD CAUSE OF ACTION

### (42 U.S.C. §1983 – Unlawful Detainment)

69.    The defendants John Doe #1, John Doe #2, and John Doe #3, while acting under the color of law, violated Nathan Smith's constitutional rights.

70.    The actions of the defendants John Doe #1, John Doe #2, and John Doe #3 violated the constitutional rights guaranteed to Nathan Smith under the Fourth and Fourteenth Amendments to the United States Constitution.

71.    The actions of the defendants John Doe #1, John Doe #2, and John Doe #3 were not taken in good faith and were in violation of clearly established law.

72.    The defendants John Doe #1, John Doe #2, and John Doe #3 violated Nathan Smith's constitutional rights, as described and identified herein, by unlawfully detaining the plaintiff on or about February 4, 2024.

73.    When the defendants John Doe #1, John Doe #2, and John Doe #3 unlawfully detained Nathan Smith, no objectively reasonable police officer could have perceived that action as appropriate or necessary.

74.     As a direct and proximate result of the defendants John Doe #1, John Doe #2, and John Doe #3's unconstitutional actions, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.     Physical pain and suffering, past and future;

B.     Mental pain and suffering, past and future;

C.     Injuries resulting from the defendants' conduct;

D.     Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.     All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

75.     In addition to these compensatory damages, the plaintiff, Nathan Smith, also seeks to recover, under 42 U.S.C. §1988 the attorney fees and costs incurred during the course of this litigation.

76.     In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights, the plaintiff, Nathan Smith, as representative of the Estate of Edmond Exline, further seeks to have the Court order the defendants John Doe #1, John Doe #2, and John Doe #3 to undergo additional training and education addressing the defendants John Doe #1, John Doe #2, and John Doe #3's unlawful detainment of the plaintiff, the development of policies to preclude such actions in the future, and the implementation of discipline against the defendants John Doe #1, John Doe #2, and John Doe #3 to hold them accountable for their wrongful actions.

77.     The defendants John Doe #1, John Doe #2, and John Doe #3's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard

of the rights owed to Nathan Smith, thereby entitling the plaintiff, Nathan Smith, to punitive damages in an amount to be determined by the jury.

### FOURTH CAUSE OF ACTION

**(Battery)**

78.     The defendants John Doe #1 and John Doe #2 committed batteries upon the plaintiff

79.     As a proximate result of defendants John Doe #1 and John Doe #2's batteries against Nathan Smith, Nathan Smith's neck was broken.

80.     As a proximate result of defendants John Doe #1 and John Doe #2's batteries, the plaintiff, Nathan Smith, suffered medical expenses and other expenses.

81.     As a direct and proximate result of the defendants John Doe #1 and John Doe #2's batteries, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.      Physical pain and suffering, past and future;

B.      Mental pain and suffering, past and future;

C.      Injuries resulting from the defendants' conduct;

D.      Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.      All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

82.     The defendants John Doe #1 and John Doe #2's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Nathan Smith, thereby entitling the plaintiff, Nathan Smith, to punitive damages in an amount to be determined by the jury.

12

## FIFTH CAUSE OF ACTION

### (Assault)

83.    The defendants John Doe #1 and John Doe #2 committed assaults upon Nathan Smith which proximately caused his injuries.

84.    As a direct and proximate result of the defendants John Doe #1 and John Doe #2's assaults against Nathan Smith, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.    Physical pain and suffering, past and future;

B.    Mental pain and suffering, past and future;

C.    Injuries resulting from the defendants' conduct;

D.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.    All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

85.    The defendants John Doe #1, John Doe #2's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Nathan Smith, thereby entitling the plaintiff, Nathan Smith, to punitive damages in an amount to be determined by the jury.

## SIXTH CAUSE OF ACTION

### (42 U.S.C. §1983 – *Monell* Liability)

86.     The defendants West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission have engaged in a pattern, practice, or custom of failing to adequately train and/or supervise its employees on the appropriate use of force and lawful detention, such that the defendants West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission exercised deliberate indifference to the rights of Nathan Smith and others.

87.     The deprivation of Nathan Smith's rights were caused by the implementation of customs, policies, and/or official acts/omissions of the defendants West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission to wit: among other things, failure to adequately train, supervise, and discipline officers regarding violations of citizens' constitutional rights including the justified use of force.

88.     The defendants West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission, by these acts and omissions, have exhibited deliberate indifference to the unreasonable risk of the unlawful deprivation of citizens' constitutional rights, which their customs and policies pose.

89.     The customs and policies violated the Fourth and Fourteenth Amendments to the United States Constitution and under Article III, Sections 1 and 10 of the West Virginia Constitution.

90.     As a proximate cause of the defendant West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission's actions and/or omissions, Nathan Smith's constitutional rights were violated and his neck was broken.

14

91.    As a proximate result of defendants West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission actions and/or omissions, the plaintiff, Nathan Smith, suffered medical expenses and other expenses.

92.    As a direct and proximate result of the defendants West Virginia State Police, Mineral County Sheriff's Department, and Mineral County Commission's actions and/or omissions, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.    Physical pain and suffering, past and future;

B.    Mental pain and suffering, past and future;

C.    Injuries resulting from the defendants' conduct;

D.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.    All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

## SEVENTH CAUSE OF ACTION

### (Negligent Training/Supervision)

93.    The defendant West Virginia State Police failed to properly train and/or supervise the defendants John Doe #1 and John Doe #2 regarding the use of excessive force.

94.    As a proximate cause of the defendant West Virginia State Police's actions and/or omissions, Nathan Smith's neck was broken.

95.    As a proximate result of defendant West Virginia State Police's negligent training and/or supervision, the plaintiff, Nathan Smith, suffered medical expenses and other expenses.

15

96.     As a direct and proximate result of the defendant West Virginia State Police's negligent training and/or supervision, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.     Physical pain and suffering, past and future;

B.     Mental pain and suffering, past and future;

C.     Injuries resulting from the defendants' conduct;

D.     Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.     All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

## EIGHTH CAUSE OF ACTION

### (Negligence)

97.     The defendants were negligent in the performance of their duties within the scope of their employment and such negligence was the proximate cause of Nathan Smith's injuries.

98.     As a proximate result of defendants' negligence, the plaintiff, Nathan Smith, suffered medical expenses and other expenses.

99.     As a direct and proximate result of the defendants' negligence, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.     Physical pain and suffering, past and future;

B.     Mental pain and suffering, past and future;

C.     Injuries resulting from the defendants' conduct;

16

D.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.    All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

## NINTH CAUSE OF ACTION

### (Gross Negligence)

100.    The defendants were grossly negligent in the performance of their duties within the scope of their employment and such gross negligence was the proximate cause of Nathan Smith's injuries and damages.

101.    As a proximate result of defendants' gross negligence, the plaintiff, Nathan Smith, suffered medical expenses and other expenses.

102.    As a direct and proximate result of the defendants' gross negligence, the plaintiff, Nathan Smith, seeks to recover damages in an amount to be determined by the jury to compensate him for:

A.    Physical pain and suffering, past and future;

B.    Mental pain and suffering, past and future;

C.    Injuries resulting from the defendants' conduct;

D.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

E.    All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Nathan Smith, prays for the following relief:

17

1.    Damages set forth in his Complaint, including punitive damages in an amount to

be determined by the jury;

2.    Pre-judgment interest as provided by law;

3.    Attorney fees and costs; and

4.    Such further relief as this Court may deem just and equitable.

PLAINTIFF DEMAND A JURY TRIAL ON ALL ISSUES TRIABLE TO A JURY.

NATHAN SMITH
By Counsel

/s/ John-Mark Atkinson
John-Mark Atkinson (WVSB #12014)
Mark A. Atkinson (WVSB #184)
ATKINSON & FRAMPTON, PLLC
2306 Kanawha Boulevard East
Charleston, WV  25311
(304) 346-5100
johnmark@amplaw.com
emboles@amplaw.com